IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHICO ROMERO WATTS,

                    Petitioner,

            vs.

D. ADAMS,

                    Respondent.

No. 2:10-cv-277-JKS

MEMORANDUM DECISION

## I.  BACKGROUND/PRIOR PROCEEDINGS

Presently before this Court is Chico Romero Watts' ("Watts") Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2254, filed in March 2012.  In April 2007, Watts was convicted by a Siskiyou County jury for various firearm offenses in two cases, and another jury in the third case in June 2007 found him guilty of misdemeanor battery, inflicting corporal injury on a cohabitant, assault by means of force likely to cause great bodily injury, false imprisonment by violence, and battery.  In July 2007, Watts was sentenced by the trial court on the various charges to a total term of twenty-seven years and four months.

The California Court of Appeal affirmed the judgment in April 2009, and the California Supreme Court denied review in August 2009.  After initially filing a habeas petition in this Court in February 2010, Watts' exhausted claims were stayed and held in abeyance while he exhausted his state-court remedies.  Doc No. 17.  In February 2012, Watts filed a notice that his claims were exhausted, and the Magistrate Judge ordered Watts to file an Amended Petition. Doc. No. 28, 29.

## II.  GROUNDS RAISED

In March 2012, Watts filed an Amended Petition, making the following six claims: (1) that he was unconstitutionally shackled during trial; (2) that there was insufficient evidence to support various sentencing enhancements; (3) that the trial court improperly denied his *Faretta* motion for self-representation; (4) that the trial court improperly limited his custodial credits; (5) that the trial court erred by giving an inadequate unanimity jury instruction on the assault and battery counts; and (6) that the prosecutor committed misconduct.  Respondent claims that Watts' second, fourth, fifth and sixth claims are procedurally defaulted.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling, Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  The holding must also be intended to

be binding upon the states; that is, the decision must be based upon constitutional grounds, not

on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3,

10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review

are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established

Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted). In applying these

standards in habeas review, this Court reviews the "last reasoned decision" by the state court.

*Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911,

918 (9th Cir. 2002)). Under AEDPA, the state court's findings of fact are presumed to be correct

unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. §

2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. Discussion

### A.     Procedural Default

Respondent argues that Watts' second, fourth, fifth, and sixth claims have been

procedurally defaulted.

Federal courts "will not review a question of federal law decided by a state court if the

decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This

Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the

petitioner failed to follow applicable state procedural rules in raising the claims . . . ." *Sawyer v.

Whitley,* 505 U.S. 333, 338 (1992). Procedural default does not preclude federal habeas review

unless the last state court rendering judgment in a case clearly and expressly states that its

judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris*, 489 U.S. at 262-63).

"[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks omitted); *see also Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) ("For a state procedural rule to be 'independent,' the state law ground for decision must not be 'interwoven with federal law.'" (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris*, 489 U.S. at 265)). The fact that the state court also ruled on the merits in the alternative does not vitiate a procedural bar defense. *Comer v. Schriro*, 480 F.3d 960, 964 n.6 (9th Cir. 2007) (citing *Harris*, 489 U.S. at 264 n.10).

If a petitioner's claim is defaulted in state court on an adequate and independent state ground, it will not be considered in a federal habeas proceeding unless the petitioner can demonstrate cause for the default and actual prejudice, i.e., a miscarriage of justice. *Coleman*, 501 U.S. at 729. To prove a fundamental miscarriage of justice, a petitioner must show that a constitutional violation probably resulted in his conviction despite his actual innocence. *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent.").

### 1. Claims Two, Four, and Five

In his Traverse, Watts states that he wishes to withdraw his second, fourth, and fifth claims. Doc. No. 39 at 8, 15. Accordingly, this Court will not address his second (sufficiency of

the evidence), fourth (improper limitation of custodial credits), or fifth (inadequate jury

instructions) claims.  Watts is not entitled to relief on those claims.

### 2. Claim Six

In his sixth claim, Watts argues that the prosecutor committed multiple acts of prejudicial

misconduct.  Respondent argues that although Watts presented this claim in his state-habeas

petition to the California Supreme Court, Lodged Doc. 16, at 30-57, he never presented it on

direct appeal to the California Supreme Court, *see* Lodged Doc. 14.  The California Supreme

Court denied this claim on habeas review, citing *In re Waltreus*, 62 Cal.2d 218 (1965).  Lodged

Doc. 17.  Respondent argues therefore that the citation to *Waltreus* under these circumstances

amounts to a procedural default and thus bars this Court's review of the claim, relying on *Forrest*

*v. Vasquez*, 75 F.3d 562, 563 (9th Cir. 1996).

Respondent's position is essentially that a denial of a claim under *Waltreus,* a rule which

provides that "any issue that was *actually* raised and rejected on appeal cannot be renewed in a

petition for a writ of habeas corp," *Forrest v. Vasquez*, 75 F.3d 562, 563 (9th Cir. 1996) (internal

quotation marks and citation omitted), results in a procedural default thus barring this Court from

reaching the merits of this claim.  *Whitley,* 505 U.S. at 338; Doc. No. 37 at 39, 48-49, 51-52, 60-

61.  However, the Ninth Circuit has stated that a denial under *Waltreus* "is neither a ruling of

procedural default nor a ruling on the merits," but rather "merely bars relitigation in state habeas

proceedings of claims already litigated on direct appeal."  *Carter v. Giurbino*, 385 F.3d 1194,

1198 (9th Cir. 2004).

Indeed, "a citation to *Waltreus* by a state court, standing alone, is neither a ruling on the

merits, nor a denial on procedural grounds, and, as such, has no bearing on a California

Prisoner's ability to raise a constitutional claim on Federal habeas review." *Medina v. Sandor*, 2012 WL 3689906, at * 4-6 (C.D. Cal. June 14, 2012) (citing *Ylst* v. *Nunnemaker*, 501 U.S. 797, 805 (1991)).  In a situation such as this one, where Respondent "asserts that a petition brought by a California state prisoner is procedurally barred by a citation to *Waltreus*, a court must 'look through' that citation to the last reasoned state court decision in order to determinate whether the citation to *Waltreus* was based on an earlier procedural bar." *Id.* (citing *Ylst*, 501 U.S. at 805-806).

      Respondent argues that in *Forrest v. Vasquez*, similar to this case, the petitioner Forrest failed to timely raise his library access claim on direct review to the California Supreme Court. 75 F.3d at 563-64.  Forrest later filed for relief from default to the California Supreme Court on direct review, but the California Supreme Court denied his application for relief from default since Forrest had failed to follow Rule 28(b) of the California Rules of Court (now Rule 8.500(e)), which requires a petition for review on direct appeal to the California Supreme Court to be filed within ten days after the Court of Appeal decision becomes final. *Id.* at 563.  Forrest later raised his library access claim in a state-habeas petition to the California Supreme Court, but the court denied his claim citing only *Waltreus*. *Id.*

      The Ninth Circuit held that Forrest's library access claim was procedurally defaulted, not because of the California Supreme Court's rejection of his claim with a citation only to *Waltreus* on state habeas review, but rather because of his failure to follow Rule 28(b). *Id.*  The Ninth Circuit noted that a "direct appeal is not necessary to exhaust state remedies if state law provides an alternative route of review through a writ of habeas corpus brought before the state's highest court," *id.* (citing *Acosta-Huerta v. Estelle*, 7 F.3d 139, 141 (9th Cir. 1993)), but that in

California, "habeas corpus is not an alternative to a direct appeal" because of California's *Dixon*

rule," which "'generally prohibits raising an issue in a postappeal habeas corpus petition when

that issue was not, but could have been, raised on appeal,'" *id.* (citing *In re Harris*, 21 Cal. Rptr.

2d 373, 395 (1993); *In re Dixon*, 264 F.2d 513 (1954)).  The court noted that in *Ylst*, the Supreme

Court concluded that a citation to *Waltreus* "is neither a ruling on the merits nor a denial on

procedural grounds," that "a *Waltreus* denial on state habeas review has no bearing on [a

petitioner's] ability to raise a claim in federal court," and that therefore "federal courts 'look

through' a denial based on *Waltreus"* to the last reasoned state court decision addressing the

claim.  *Id.* at 564.  in

        In *Forrest*, however, the Ninth Circuit  explicitly refused to look through prior

unexplained state court decisions to the last reasoned opinion addressing the claim because it

claimed the "'nature' and 'surrounding circumstances' of the unexplained order clearly show[ed]

that the basis of the decision was a procedural default."  *Id.* (citing *Ylst*, 501 U.S. at 802;

*Coleman*, 501 U.S. at 735 n.*).

        What makes Watts situation slightly different than *Forrest* is that there, the Ninth Circuit

clearly understood that the California Supreme Court's rejection of the library access claim with

a citation to *Waltreus* rested on an independent and adequate state procedural ground.  This is so

because Forrest had applied for relief from default on direct appeal to the California Supreme

Court, which denied his claim specifically because his petition for review on direct appeal was

untimely under Rule 28(b) of the California Rules of Court.  Thus, when the *Forrest* Court

looked through the California Supreme Court's citation to *Waltreus*, it saw the California

Supreme Court's denial of Forrest's application for relief from default, which made it clear that

his library access card claim had been denied because of a state procedural rule. *See Medina*, 2012 WL 3689906, at * 4 ("In *Forrest*, since the California Supreme Court denied the petitioner's habeas petition with a citation to *Waltreus*, the Ninth Circuit 'look[ed] through *Waltreus* to an order that was clearly based on [petitioner's] failure to comply with a procedural rule,' referencing the California Supreme Court's denial of petitioner's application for relief from default, which was the last explained opinion, and which was based on a procedural bar.").

Here, however, as to Watts' sixth claim, the last reasoned decision was that of the California Court of Appeal and not a decision of the California Supreme Court which clearly rested on an independent and adequate state procedural ground, which was the case in *Forrest*. Thus, while Respondent is correct in that under the facts of *Forrest*, a citation to *Waltreus* under those circumstances did amount to a procedural default, this Court cannot assume, as the *Forrest* court did, that the California Supreme Court rejected this claim on an independent and adequate state procedural ground in its citation to *Waltreus*.

Accordingly, since Watts did not withdraw this claim (claim six), this Court must "'look through' the *Waltreus* citation to the last reasoned state court decision, in this case the California Court of Appeal's decision on direct appeal, in order to determine whether the citation to *Waltreus* was based on an earlier procedural bar." *Medina*, 2012 WL 3689906, at * 4-6. (citing *Ylst*, 501 U.S. at 805).

### a. The California Court of Appeal's Decision

Addressing Watts' multiple claims of prosecutorial misconduct, the California Court of Appeal declined to rule on the merits of the first sixteen claims, stating that Watts had forfeited these claims based on (1) his attorney's failure to request an admonition after the court sustained

8

defense counsel's objection (thirteen claims of misconduct) and (2) his attorney's failure to object to the prosecutor's statements during closing arguments (three claims of misconduct). Lodge Doc. 11 at 25-38.

      *b.  Analysis*

The Ninth Circuit has held that in the prosecutorial misconduct context, claims are procedurally defaulted where the state court refuses to address the claims because the defendant failed to make a contemporaneous objection to the prosecutor's statements.  *See Fairbanks v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011) (noting that California "consistently applies its contemporaneous objection rule when a party fails to object to the admission of evidence," and holding that because the state supreme court relied on this rule in ruling that the prosecutorial misconduct claim was waived, Fairbanks' prosecutorial misconduct claims were procedurally defaulted based on an independent and adequate state procedural rule); *see also Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999) ("We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome.").

This Court will not address Watts' prosecutorial misconduct claims that the state court ruled were not preserved for appeal and thus were forfeited, because this forfeiture was an adequate and independent state ground upon which the state court rejected these claims, unless Watts can demonstrate cause for the default and actual prejudice, i.e., a miscarriage of justice. *Coleman,* 501 U.S. at 729.  Watts is unable to meet this burden.  Consequently, sixteen of the

nineteen prosecutorial misconduct claims, or those which the state court refused to address on the merits because Watts failed to preserve those claims on appeal, are procedurally defaulted.

**B.      Merits**

<u>1. Claim One: Shackling at trial</u>

Watts contends that the trial court erred in shackling him during trial because there was no "manifest necessity to shackle" him during the trial.  Doc. No. 30 at 13.  Respondent contends that Watts has failed to show that the California Court of Appeal's decision denying this claim on direct appeal was contrary to or an unreasonable application of clearly established federal law. Doc. No. 37 at 24.

> *a.   The California Court of Appeal's Decision*

The California Court of Appeal noted that a defendant may be physically restrained during trial "only upon a finding of manifest need based on an affirmative showing of the defendant's expressed intent to escape, past violence or threat of violence, or other nonconforming conduct that has disrupted the proceedings or will disrupt them in the absence of restraints."  Lodged Doc. 11, at 16-20 (citing *People v. Vance*, 141 Cal. App. 4th 1104, 1112 (2006)).  Watts claimed that the trial court simply deferred to his trial counsel's fear and that there was no evidence that Watts intended to harm counsel.  The court rejected this, noting that the trial court properly considered the facts before it and that considering trial counsel's own first hand account of Watts' behavior was proper.  *Id.*

> *b.   Analysis*

The Supreme Court has stated that the Fifth and Fourteenth Amendments prohibit using physical restraints visible to the jury absent a trial court determination, in the exercise of its

discretion, that restraints are justified by a state interest specific to the particular defendant on

trial. *Deck v. Missouri*, 544 U.S. 622, 622 (2007).  In *Deck*, the Supreme Court noted that

"[v]isible shackling undermines the presumption of innocence and the related fairness of the

factfinding process" and "suggests to the jury that the justice system itself sees a need to separate

a defendant from the community at large." *Id.* at 630.  Further, "shackles can interfere with the

accused's 'ability to communicate' with his lawyer" and diminishes the defendant's right to

counsel. *Id.* at 631 (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)).  Finally, in *Deck* the

Supreme Court stated that "the routine use of shackles in the presence of juries would

undermine" the dignity of the courtroom and our judicial system.  *Id.* ("[T]he use of shackles at

trial 'affronts' the 'dignity and decorum of judicial proceedings that the judge is seeking to

uphold.'" (citing *Allen*, 397 U.S. at 344)).

However, in *Deck* the Court also noted that the right is not absolute, and a trial court is

permitted, "in the exercise of [its] discretion, to take account of special circumstances, including

security concerns, that may call for shackling." *Id.* at 633.  The Court in *Deck* added:

> In doing so, it accommodates the important need to protect the courtroom and its
> occupants.  But any such determination must be case specific; that is to say, it
> should reflect particular concerns, say, special security needs or escape risks,
> related to the defendant at trial.

*Id.*[1]

---

[1]  It should be noted that in *Deck* the Supreme Court overturned the Missouri Supreme Court's decision to uphold the trial court's decision to restrain Deck during the sentencing proceeding, where he was sentenced to death for murder.  The Supreme Court found that Deck's due process rights were violated and overturned the Missouri Supreme Court's decision because the jury saw the restraints, the trial court did not discuss specific reasons why Deck needed to be shackled, and because shackling is inherently prejudicial.  *Deck*, 544 U.S. at 623.  There, however, the trial court did not make a finding that Deck was an escape or security threat, while here the trial court specifically related the shackling to the fact that Watts was a security threat.

11

In this case, the California Court of Appeal applied the requirements of *Deck*.  It held a hearing before each trial on whether shackles during trial were necessary and made specific findings that they were necessary because Watts was a security threat.  Further, the trial court gave a limiting instruction to the jury in both cases which specifically admonished the jury to ignore the shackles, that they must be "absolutely certain that [the shackles] in no way, shape, or form affects your decisions and your deliberations and your thinking in this case," and that "you may not consider it in any way, shape, or form."  Lodged Doc. 4 at 593.

The trial court also admonished the jury after the second trial that the shackles were not evidence, that they were not to consider the shackles in any way or discuss the shackles during deliberations, and that they could not speculate about the shackles.  Lodged Doc. 1 at 595; Lodged Doc. 4, at 1205.  Although Watts was convicted of assault, battery, and false imprisonment, among other things, by that jury, the jury also found him not guilty of forcible rape and forcible sodomy, the two most serious charges in Watts' second trial.  As Respondent points out, this fact alone shows that the jury was able to weigh the evidence without prejudice. *See, e.g., United States v. De Cruz*, 82 F.3d 856, 863 (9th Cir. 1996) ("The fact that the jury acquitted defendant of one of the three charges that was presented to them for decision further indicates a lack of prejudice toward defendant" and "'is indicative of the jury's ability to weigh the evidence without prejudice.'" (quoting *United States v. Koon*, 34 F.3d 1416, 1446 (9th Cir. 1994))).

Accordingly, Watts is not eligible for relief on his first claim because the decision of the California Court of Appeal was not "contrary to, or [did not] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," § 2254(d)(1); and, its decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### 2. Claim Three: Farretta Motion

In his third claim, Watts argues that the trial court who presided over his superior court arraignment (in all three cases) on November 7, 2006, committed reversible error by denying his *Faretta* motion to represent himself.[2]  Doc. No. 30 at 22.

#### a.  California Court of Appeal's Decision

Watts argued to the California Court of Appeal that he made a timely *Faretta* request to represent himself at the November 7, 2006, hearing, and that the trial court had no choice other than to grant the request.  *People v. Watts*, 92 Cal. Rptr. 3d 806 (App. Div. 2009).  He further claimed that only his conduct at trial could serve as the basis to deny his motion, not his conduct during the preliminary hearings.  *Id.* at 812-813.

In rejecting this argument, the California Court of Appeal noted that the "right to self-representation is unconditional when a defendant makes a reasonably timely request (whereas an untimely request is subject to the trial court's discretion based on prescribed factors)."  *Id.* at 813 (citing *People v. Windham*, 560 P.2d 1187 (1977)).  The court noted, however, that the request "must be unequivocal and must not be an ill-considered decision that is a function of annoyance or frustration."  *Id.* (citing *People v. Marshall*, 931 P.2d 262, 271-72 (1997)).  The California Court of Appeal added: "a defendant requesting the right of self-representation must possess the

---

[2] *See Farretta v. California*, 422 U.S. 806 (1975) (The Sixth Amendment generally allows a defendant in a state court criminal proceeding to assert a right to self-representation).

ability and willingness 'to abide by rules of procedure and courtroom protocol.'" *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984)).

Applying that law to Watts, the Court of Appeal noted that his conduct was "relevant" because "before trial [Watts] continuously manifested an inability to conform his conduct to procedural rules and courtroom protocol," and that it "would be a nonsensical and needless waste of scarce judicial resources to proceed to trial when, as here, [Watts] has shown by his conduct during pretrial proceedings that he is unable to conform to procedural rules and protocol." *Id.* at 813. Moreover, the Court explained that during the hearings leading up to the November 7, 2006, hearing at issue, Watts "repeatedly requested to represent himself whenever Judge Kaster did not rule as he desired," but "would then withdraw the request once the heat of the moment passed." *Id.*

The court added that since that hearing, Watts showed no interest in renewing his request to represent himself, making it "questionable whether [his] request on November 7 was unequivocal and not a function of pique." *Id.* at 814. In any event, the court concluded that "there was a proper basis to deny his *Faretta* request" because Watts had "demonstrated his inability to conform his behavior to the rules of procedure and courtroom protocol" and was "unable to control himself even when acting under the guidance of counsel." *Id.*

### b. Analysis

In his Amended Petition currently before this Court, Watts makes the same argument he made on appeal to the California Court of Appeal and the California Supreme Court. Federal law and Supreme Court precedent are almost identical to the California law the California Court of Appeal applied in denying this claim on direct appeal. The California Court of Appeal even

cited two of the Supreme Court cases applicable to this Court's federal habeas review on this issue, *Faretta v. California*, 422 U.S. 806 (1975),and *McKaskle v. Wiggins*, 465 U.S. 168 (1984). *See Watts*, 92 Cal. Rprt. 3d at 813 (citing *Faretta* and *McKaskle*).

Under *Faretta*, the Supreme Court held that a defendant in a state-criminal proceeding is entitled to assert a right of self-representation.  422 U.S. at 834-835.  The Supreme Court has stated, however, that "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute," and even "at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161-62 (2000). Moreover, the Supreme Court has recognized that the a defendant's Sixth Amendment right to conduct his or her own defense must involve a knowing and intelligent waiver of the right to counsel and the defendant's willingness and ability "to abide by rules of procedure and courtroom protocol."  *McKaskle*, 465 U.S. at 173.

Here, the California Court of Appeal reasonably concluded that based on Watts' behavior leading up to the November 7 hearing, he would have been unable to abide by the court's "rules of procedure" and "protocol."  *Id.*  The law applied by the California Court of Appeal mirrors Supreme Court precedent on the issue.  Accordingly, the California Court of Appeal's decision to affirm the trial court's denial of Watts' *Faretta* motion was not "contrary to," and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); and, its decision was also not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  Watts is not entitled to relief under his third ground.

### 3. Claim Six: Prosecutorial Misconduct Claims Not Procedurally Defaulted

The California Court of Appeal addressed and rejected three of Watts' claims of prosecutorial misconduct on the merits, including: (1) the prosecution's use of a detective's opinion testimony at trial where the detective stated that at the crime scene the victim was allowed to shower, that Watts wanted to know why the victim was allowed to shower, and that over defense counsel's objection the detective was allowed to give his opinion at trial as to why Watts asked this question; (2) the prosecutor's question concerning Watts' statement that an examination of the victim would not reveal any of his DNA unless the victim had not showered since Watts claimed he had sex with the victim a few days earlier, where the prosecution characterized Watts' statement as an excuse; and (3) Watts' claim that the trial court's instruction to the jury to disregard a deputy's statement at trial was insufficient to cure the taint of the statement which implied that because Watts' immediately invoked his right to an attorney at the crime scene, he must have been guilty.  Lodge Doc. 11, at 35-38.

#### a. California Court of Appeal's Decision

In rejecting these claims that were preserved for appeal, the Court stated that a prosecutor "commits misconduct under state law through a resort to deceptive or reprehensible tactics designed to sway the verdict for the finder of fact," and that "this rises to a violation of the federal constitution where the prosecution's actions permeate the proceedings with 'a degree of unfairness' that renders them a deprivation of due process."  Lodged Doc. 11 at 25 (citing *People v. Penah*, 107 P.3d 790, 834 (Cal. 2005)).  The California Court of Appeals rejected the additional claims on the merits, noting that none of the claims met the standard for prosecutorial misconduct.

16

Concerning Watts' claim about the detectives opinion as to why Watts asked why the victim was allowed to shower, the court simply noted that the showering testimony "did not remotely come under any guise of the detective's expertise" and "[w]e therefore reject this misconduct claim."  Lodged Doc. 11 at 36.  Regarding the claim where the prosecution characterized Watts' statement about the victim showering and any possible DNA evidence from an examination as an excuse, the Court stated:

> [Watts'] claim of error rests on his assertion that the detective 'implicitly adopted' the argumentative characterization in the prosecutor's questions.  We disagree with this effort to fashion error.  The jury was aware that the questions of counsel are not evidence of any sort and only reflect the prosecution's point of view.  The jury was perfectly capable of assessing the defendant's statements for itself and to attribute to them whatever probative value they possessed.

*Id.*

Finally, concerning Watts' last claim of prosecutorial misconduct preserved for appeal, the court stated that Watts was basically arguing the deputy's testimony that was stricken from the record violated his right to an attorney, but that even acknowledging that "it is difficult to remove" the taint caused by a stricken statement from the jury "even through admonishment," Watts failed to "acknowledge the presumption essential to the system of trial by jury of the effectiveness of admonitions, except where evidence is incurably inflammatory or devastating." *Id.* at 38 (internal quotation marks and citation omitted).  The court also noted that "an admonition will generally cure a violation that is fairly innocuous," *id.* (internal quotation marks and citation omitted), and that the "present case involve[d] just such a fairly innocuous violation (if a violation it be), *id.*  The court concluded that "the request for counsel in the course of an arrest does not lead irretrievable to imputing a guilty conscious to [Watts]." *Id.*  Accordingly, the California Court of Appeal rejected this claim of prosecutorial misconduct.

17

>    *b.   Analysis*

Under current law as interpreted by the Supreme Court in this context, "[t]o warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

> In determining whether a comment rendered a trial constitutionally unfair, factors [the court] may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence.

*Hein v. Sullivan*, 601 F.3d 897, 912-13 (9th Cir. 2010); *see Darden*, 477 U.S. at 182.

In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there was a "reasonable probability" of a different result.  *See Hein*, 601 F.3d at 914-15. "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Darden*, 477 U.S. at 181 (citations and internal quotation marked omitted).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.*

The California Court of Appeal reasonably concluded that the prosecutorial misconduct claims that were not waived on appeal were without merit.  The court applied a standard almost identical to the federal standard for prosecutorial misconduct.  Having reviewed the prosecutorial misconduct claims that the California Court of Appeal rejected on the merits, this Court agrees that these claims are meritless.  Accordingly, the California Court of Appeal's decision was not "contrary to," and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); and, its decision

was also not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  Watts is not entitled to relief on his prosecutorial misconduct claims (claim six) that were preserved for direct appeal and not procedurally defaulted.

## V.  CONCLUSION AND ORDER

Watts is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[3]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[4]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 8, 2013.

　　　　　　　　　　　　　　　　　　　／s／ James K. Singleton, Jr.　　
　　　　　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[4] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.